**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GARY RUEHLING, individually,**

    **Plaintiff,**

**v.**                                                       **Case No: 8:12-cv-2724-T-35TGW**

**JOHN H ARMSTRONG, FACS, in his**
**official capacity acting as State**
**Surgeon General for the Florida**
**Department of Health,**

    **Defendant.**

_____/

## <u>ORDER</u>

    **THIS CAUSE** comes before the Court for consideration of the Motion for Summary Judgment (Dkt. 79) filed by Defendant, Dr. John H. Armstrong, in his official capacity as the State Surgeon General for the Department of Health ("Dr. Armstrong"), the Response in opposition thereto (Dkt. 86) filed by Plaintiff, Gary Ruehling ("Ruehling"), and the Reply (Dkt. 90) filed by Dr. Armstrong; and the Motion for Summary Judgment (Dkt. 81) filed by Ruehling, and the Response in opposition thereto (Dkt. 85) filed by Dr. Armstrong.   The Court also considered the Suggestion of Mootness (Dkt. 93) filed by Dr. Armstrong. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Dr. Armstrong's Motion for Summary Judgment (Dkt. 79) and **DENIES** Ruehling's Motion for Summary Judgment.   (Dkt. 81)

## I.     BACKGROUND

### a.     Procedural History

Plaintiff Ruehling filed his original putative class action Complaint in this case on December 5, 2012, against Defendants, the Florida Department of Health (the "Department") and Ana M. Viamonte Ros, M.D., M.P.H.[1]   (Dkt. 1)   On March 8, 2013, Ruehling filed an Amended Complaint, adding Defendants Dr. John H. Armstrong, in his official capacity as the State Surgeon General for the Department, and Jennifer Tschetter, individually.   (Dkt. 12)   Dr. Armstrong and the Department filed a motion to dismiss the Amended Complaint on April 1, 2013.   (Dkt. 16)   On January 17, 2014, the Court dismissed all claims against the Department and the claim for damages against Dr. Armstrong in his official capacity.   (Dkt. 28)   Thereafter, Ruehling filed a Second Amended Complaint on February 18, 2014.   (Dkt. 35)   On March 3, 2014, Dr. Armstrong filed a motion to dismiss the Second Amended Complaint.   (Dkt. 36)   The Court denied Dr. Armstrong's motion to dismiss on November 3, 2014.   (Dkt. 65)   Defendant Jennifer Tschetter also filed a motion to dismiss on May 15, 2014.   (Dkt. 47)   The Court granted Tschetter's motion and dismissed the claim asserted against her on November 14, 2014. (Dkt. 68)

Currently, Dr. Armstrong, in his official capacity, is the only remaining defendant and Ruehling is the sole plaintiff in this case, as he has withdrawn his class action allegations.   (Dkt. 54)   Ruehling's Second Amended Complaint contains two claims. (Dkt. 35)   His first claim is that the Department issued an emergency suspension of his nursing license based on a state statutory scheme that he contends does not apply to him

---

[1] Defendant, Ana M. Viamonte Ros, M.D., M.P.H. was never served in this case.

or other nurses in the private sector.   As a remedy for Count I, Plaintiff seeks a declaratory judgment that §§ 112.0455 and 456.074 of the Florida Statutes are "constitutionally, statutorily, and administratively invalid" as to him.   Plaintiff also requests the Court to enjoin Dr. Armstrong from applying § 456.074(3) of the Florida Statutes to him.   In Count II, Plaintiff claims, under 42 U.S.C § 1983, that in the course of the emergency suspension of his license, Ruehling was denied procedural due process. He seeks a determination confirming the alleged violation and affirmative injunctive relief in the form of a directive of some sort issued by the Court directing that Dr. Armstrong remove his name from any and all records as having a positive drug test, and he further seeks prospective injunctive relief to preclude such drug testing in the future.   The parties have now filed cross-Motions for Summary Judgment as to both Counts contained in the Second Amended Complaint.   (Dkt. 79, 81)

   **b.   Undisputed Facts[2]**

   Plaintiff Ruehling is a registered nurse licensed in Florida.   He was first licensed in 1988.   In the 1990s, Ruehling encountered substance abuse problems and received three separate administrative complaints alleging multiple drug-related violations that took place at the hospitals where he worked.   Two of those administrative complaints resulted in a license suspension.   In order to resolve one of his cases, Ruehling entered into a written settlement agreement under which he agreed to enter into the Intervention Program for Nurses ("IPN").   While Ruehling was in that program, he started working at the Palms of Pasadena Hospital (the "Palms") as a registered nurse.

---

   2   Unless otherwise noted, the undisputed facts are based on the parties' Joint Stipulation.   (Dkt. 84)

On February 16, 2009, Ruehling's then-employer, the Palms, ordered him to take a drug test.   The resulting reports indicated that Ruehling's urine sample tested positive for methadone, and this test was purportedly confirmed by two different testing procedures followed by Kroll Laboratories, Inc. ("Kroll").   (Dkt. 79 at P. 3)   At Ruehling's request and his own expense, Baptist Medical Center in Arkansas retested his sample; this test also confirmed that Ruehling's urine was positive for methadone.   (Id.)   The Palms terminated Ruehling from his position on March 9, 2009.   (Dkt. 79 at P. 2; Dkt. 81-1 at P. 14)

On April 7, 2009, the Department notified Ruehling that it was investigating him for potential violations of the Nurse Practice Act.   The Department advised Ruehling that he could: (1) provide a written response or call the Department to schedule an interview, (2) decline to answer any questions, and (3) be represented by counsel.   Ruehling met with the Department on May 1, 2009 and submitted a written statement on May 18, 2009.

After the investigation, the Department served Ruehling with written notice that he had tested positive for methadone.   The notice advised him that his failure to produce a lawful prescription and legitimate medical explanation may result in an emergency suspension of his nursing license.   No timely prescription or medical explanation was provided.

Based on the two positive drug tests from Kroll, the Department issued an Emergency Suspension Order ("ESO") under its authority in Florida Statutes § 456.074(3) on July 9, 2009, which immediately suspended Ruehling's nursing license.   (Dkt. 81-4) The ESO advised Ruehling that a proceeding seeking formal suspension or discipline "will be promptly instituted and acted upon in compliance with Section 120.569, Florida

Statutes." (Dkt. 81-4 at P. 6)   The ESO also included notice of Ruehling's right to immediately appeal the ESO to a state district court of appeal and instructions on how to file such an appeal.   Ruehling did not appeal the ESO.

On July 16, 2009, the Department filed an Administrative Complaint seeking formal discipline against Ruehling for his alleged "failure to meet minimal standards of acceptable and prevailing nursing practice," by testing positive for a drug when he did not have a prescription and legitimate medical reasons for using the drug.   (Dkt. 81-9 at P. 5)   The Administrative Complaint apprised Ruehling of his rights under Florida's Administrative Procedure Act ("APA"):

> Respondent [Ruehling] has the right to request a hearing to be conducted in accordance with Section 120.569 and 120.57, Florida Statutes, to be represented by counsel or other qualified representative, to present evidence and argument, to call and cross-examine witnesses and to have subpoena and subpoena duces tecum issued on his or her behalf if a hearing is requested.

(Id. at P. 7)

Ruehling timely filed a request for an informal hearing, which he later amended as a request for a formal hearing challenging the entirety of the Administrative Complaint. The Department referred the case to the Division of Administrative Hearings ("DOAH") on September 17, 2009.   A formal hearing was set to occur on December 14, 2009.   Before the hearing date, Ruehling filed with DOAH a document entitled "Motion to Withdraw Administrative Complaint," which included allegations challenging the Palms' initial collection of his urine sample, and he attached three letters from the Agency of Health Care Administration ("AHCA") regarding Ruehling's complaints about the Palms.   The Administrative Law Judge ("ALJ") denied the motion.

Thereafter, Ruehling and the Department agreed to file a joint motion to relinquish jurisdiction of the case from the ALJ and send the case back to the Department. The parties' joint request that the case be sent back to the Department was based on Ruehling's voluntary entry into a five-year monitoring contract with IPN on November 16, 2009. (Dkt. 100 at P. 32) The ALJ granted the motion on November 24, 2009, specifically granting each party the right to reopen the file upon request. (Dkt. 79 at P. 5) Neither party ever made such a request. (Id.) After jurisdiction was relinquished, the Department entered an order on November 24, 2009 lifting the emergency suspension of Ruehling's license because he had voluntarily entered into the five-year monitoring contract with IPN.

Based on Ruehling's voluntary entry into the IPN program, the Probable Cause panel for the Board of Nursing dismissed the Administrative Complaint at a public hearing on January 21, 2010. Ruehling participated in the public hearing via telephone. Ruehling's case formally closed when the Closing Order on Reconsideration was entered on March 9, 2010. There was no further litigation between the Department and Ruehling until he filed this suit.

In April 2010, Ruehling sued the Palms in state court based on its independent testing of a specimen of Ruehling's urine on February 16, 2009. That case settled for an undisclosed amount. Ruehling also received an undisclosed amount from Kroll, which conducted drug testing on Ruehling's urine specimen submitted by the Palms, the results of which were relied upon in the ESO and the Administrative Complaint.

Since the ESO was lifted, Ruehling has held three different positions in the nursing field: one from which he resigned, another from which he was terminated for cause, and

the current job that he has held since November 5, 2012, as a nurse in a dialysis center operated by Fresenius Medical Care.

Defendant, Dr. Armstrong, is the current Surgeon General for the State of Florida, and the agency head for the Department.  Dr. Armstrong was appointed on April 27, 2012 and has never issued an ESO against Ruehling's license.

Around September 2012, Ruehling became aware that information related to his February 2009 positive drug tests and resulting license suspension was posted on a website called nursys.com.  (Dkt. 81-1 at P. 75)  Nursys.com is a website operated by the National Council of the State Boards of Nursing ("NCSBN").  (Dkt. 81-2 at P. 18) The NCSBN is the official reporting agent of the Department for the Federal National Practitioner Database ("NPDB").  (Id.)  Pursuant to Federal regulations, the Department is required to submit certain disciplinary actions taken against licensed healthcare practitioners to the NPDB.  See 45 C.F.R. § 60.9.  Under the agreement between the Department and the NCSBN, the Department is required to submit this disciplinary information to the NCSBN.  (Dkt. 93-1 at ¶ 2)  To do so, the Department electronically submits disciplinary information into the NCSBN's national database, called NURSYS®. (Id. at ¶¶ 3-5; Dkt. 81-1 at P. 41; Dkt. 81-2 at P. 18-19; Dkt. 93-2 at ¶ 4)  The information is then electronically submitted by the NCSBN to the NPDB.  (Dkt. 81-2 at P. 19) Certain disciplinary information submitted to the NURSYS® database is also available to the public on the NCSBN's website, nursys.com.  (Dkt. 93-1 at ¶ 9)

After being alerted to the existence of the nursys.com website, Ruehling accessed his public disciplinary action report on the nursys.com website and found that it contained information that he had tested positive for methadone and that he was participating in IPN

for five years.   (Dkt. 81-1 at P. 36-38, 40, 63-64, 69-70, 72, 75)   At that time, the

disciplinary action report available to the public showed two entries relating to Ruehling's

2009 emergency license suspension, one related to the suspension on July 9, 2009 and

one related to the reinstatement of his license on November 24, 2009.   (Dkt. 81-7; Dkt.

81-1 at P. 35-36)   These entries included narratives that were written by the Department

and submitted to NCSBN.   (Dkt. 81-2 at P. 19-21; Dkt. 93-1 at ¶¶ 4-8)   At that time, the

narratives stated:

> The Department filed an "Order of Emergency Suspension of License",
> effective July 9, 2009, based on an allegation of failing to meet minimum
> standards by testing positive for positive for [sic] methadone when he did
> not have a prescription nor a legitimate medical reason for using the drug.
>
> **. . . .**
>
> On July 9, 2009, the department issued an Emergency Suspension Order
> (ESO) for the Respondent. The Respondent executed a five year monitoring
> and advocacy contract with the Intervention Project for Nurses (IPN).
> Therefore, the ESO was lifted on November 24, 2009.

(Dkt. 81-7 at P. 2)

Thereafter, Ruehling contacted Tschetter, the Department's general counsel,

requesting that the information be removed.   (Dkt. 81-1 at P. 84-85; Dkt. 81-11 at P. 3)

After their conversations, Tschetter removed the reference to methadone in the first

narrative.   (Dkt. 81-1 at P. 84, 90; Dkt. 81-8 at P. 1)   The second narrative was also

changed to state that: "On November 24, 2009, the Department issued an 'Order Lifting

Emergency suspension' which administratively resolved this case."   (Dkt. 81-8 at P. 1)

A screenshot showing these changes also indicates that at some point links to copies of

the referenced orders (the "Order of Emergency Suspension of License" and the "Order

Lifting Emergency Suspension") were added in PDF format.   (See id.)

Ruehling then filed this action on December 5, 2012.   (Dkt. 1)   Ruehling's Second Amended Complaint challenges the statute upon which the Department relied in originally issuing the emergency suspension of his nursing license as unconstitutionally void for vagueness.   Additionally, through his claim for denial of procedural due process, Ruehling seeks to have the information regarding the two positive drug tests and the resulting emergency suspension of his license removed from the nursys.com website. The parties have now filed motions for summary judgment, each contending that they are entitled to judgment as a matter of law on both Counts asserted in Ruehling's Second Amended Complaint.   (Dkt. 79, 81)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).   Which facts are material depends on the substantive law applicable to the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party.   Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).   A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

The parties have submitted cross-Motions for Summary Judgment contending that they are each entitled to an entry of summary judgment in their favor on Counts I and II of Ruehling's Second Amended Complaint.  (Dkt. 79, 81)

### a.    COUNT I: Declaratory Judgment

In Count I, Ruehling alleges that the Department issued an emergency suspension of his nursing license based on a state statutory scheme that he contends does not apply to him or other nurses in the private sector.  Ruehling seeks a declaratory judgment that §§ 112.0455 and 456.074 of the Florida Statutes are "constitutionally, statutorily, and administratively invalid" as to him.  More specifically, Ruehling argues that § 456.074(3) is unconstitutionally void for vagueness.  He also requests the Court to enjoin Dr. Armstrong from applying § 456.074(3) of the Florida Statutes to him in the future.

### i.    Standing/Mootness

Dr. Armstrong first argues that Ruehling lacks standing to bring this claim and that the claim is moot.   The Court has already addressed Dr. Armstrong's arguments as to standing and mootness in denying his motion to dismiss the Second Amended Complaint. (Dkt. 65 at P. 6-8)   Dr. Armstrong simply offers the same arguments and does present a valid reason for the Court to reconsider its earlier ruling that Ruehling has standing and that his claim for declaratory and injunctive relief under Count I is not moot.

### ii.    Vagueness/Statutory Interpretation

Ruehling's license was suspended by the Department on an emergency basis under § 456.074(3), Florida Statutes. Ruehling's asserted constitutional challenge to § 456.074(3) and, thus, his related suspension is that the statute is void for vagueness.[3] (Dkt. 35 at ¶ 73; Dkt. 81 at P. 7; Dkt. 86 at P. 1)

 "To find a civil statute void for vagueness, the statute must be so vague and indefinite as really to be no rule or standard at all."  Boutilier v. INS, 387 U.S. 118, 123 (1967).   A civil statute is not unconstitutionally vague "if persons of reasonable intelligence can derive a core meaning from the statute."   Cotton States Mutual Ins. Co. v. Anderson, 749 F.2d 663, 669 n. 9 (11th Cir. 1984).   That is to say, constitutional vagueness is not invoked because a statute is confusing or susceptible of one or more readings; it concerns itself with a statute with no plausible meaning.   See Exxon Corp. v.

---

[3]   In his response to Dr. Armstrong's Motion for Summary Judgment, Ruehling also argues, for the first time, that Fla. Stat. § 464.018(1)(n) and Fla. Admin. Code R. 64B9-8.005(2)(k) (2009) are also unconstitutionally vague.  (Dkt. 86 at P. 4-6)   The Court declines to address these challenges as they were not properly pled.   See Gilmour v. Gates, McDonald & Co., 382 F.3d 1313, 1314-15 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); see also Barthelus v. G4S Gov't Solutions, Inc., 752 F.3d 1309, 1314 (11th Cir. 2014) (declining to address new allegations raised for the first time in response to defendant's motion for summary judgment).

<u>Ga. Ass'n of Petroleum Retailers</u>, 484 F. Supp. 1008, 1015 (N. D. Ga. 1979), <u>aff'd</u>, <u>Exxon</u>

<u>Corp. v. Busbee</u>, 644 F.2d 1030 (5th Cir. 1981)[4] ("routine existence of differences in

interpretation of a law does not void the law.").   Here the statute is neither confusing nor

void for want of any plausible meaning.

The relevant section states:

> The department may issue an emergency order suspending or restricting
> the license of any health care practitioner as defined in s. 456.001(4) who
> *tests positive for any drug on any government or private sector*
> *preemployment or employer-ordered confirmed drug test, as defined in s.*
> *112.0455,* when the practitioner does not have a lawful prescription and
> legitimate medical reason for using such drug. The practitioner shall be
> given 48 hours from the time of notification to the practitioner of the
> confirmed test result to produce a lawful prescription for the drug before an
> emergency order is issued.

Fla. Stat. § 456.074(3) (emphasis added).

The parties' dispute concerns the language highlighted above which states: " . . .

tests positive for any drug on any **government or private sector preemployment or**

**employer-ordered confirmed drug test, as defined in s. 112.0455** . . . . "   Fla. Stat.

§ 456.074(3) (emphasis added).   Ruehling states that this clause indicates that there are

two different classes of "confirmed drug tests" that may form the basis for an emergency

license suspension: tests that are "preemployment" and tests that are "employer-

ordered."   Yet, Ruehling also argues that the immediately preceding qualification of

"government or private sector" is limited to qualifying only "preemployment" drug tests

and not "employer-ordered" drug tests.   In order to reach his preferred reading of the

statute, Ruehling suggests that "employer-ordered" confirmed drug tests should only form

---

4   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the basis for an emergency license suspension under § 456.074(3) when they are ordered by either a public "employer," as defined under § 112.0445 (the "Drug-Free Workplace Act"), or by a private sector employer who opts to implement a "Drug-Free workplace program" pursuant to Fla. Stat. § 440.102.[5]   Thus, according the Ruehling, § 456.074(3) could not form the basis for an emergency suspension of his nursing license because his confirmed drug test was ordered by a private sector employer, the Palms, which had not implemented a Drug-Free workplace program under § 440.102.

Ruehling's vagueness challenge fails for at least two reasons.   First, although he argues on one hand that the statute is unconstitutionally vague, he offers his own interpretation of the statutory provision which he states clearly establishes that it should not be applied to him.   Thus, by asserting that the plain language of the statute has a clear and unambiguous application, Ruehling undermines his own argument that the provision is unconstitutionally vague as to "be no rule or standard at all."

Second, while the Court agrees that the plain language of the statutory provision indicates a clear and unambiguous interpretation and application, the Court does not find that Ruehling's self-serving interpretation is supported by the statute's plain language. The plain language of the statute provides that the Department may order an emergency suspension of a healthcare practitioner's license on the basis of a positive test "for any drug on any government or private sector preemployment or employer-ordered confirmed drug test."   Contrary to Ruehling's argument, "government or private sector" modifies

---

5   Section 112.0445, the Florida "Drug-Free Workplace Act," applies only to state agency employers.   See Fla. Stat. § 112.0445(5)(h).   Section 440.102, titled "Drug-Free workplace program requirements," allows non-state agency employers to voluntarily implement a similar drug testing program in order to secure certain discounts on insurance rates.   See Fla. Stat. § 440.102(2); see also Laguerre v. Palm Beach Newspapers, Inc., 20 So. 3d 392, 394 (Fla. 4th DCA 2009).

both "preemployment or employer-ordered" confirmed drug tests under a plain reading of the clause.   Therefore, there are four types of "confirmed drug tests" that may form the basis of an emergency license suspension under the statute: 1) government preemployment; 2) private sector preemployment; 3) government employer-ordered; and 4) private sector employer-ordered.

Additionally, the incorporated definition from § 112.0455, the Florida Drug-Free Workplace Act, defines "confirmed drug test."[6]   As one Florida court has explained, "section 112.0455 (the Drug-Free Workplace Act) is relevant in th[e] context [of emergency license suspensions] only to the extent [that] its definition of 'confirmed drug test' is incorporated in section 456.074(3)."   McNeely v. Dep't of Health, 770 So. 2d 258, 258 n.1 (Fla. 1st DCA 2000).   Although "employer" is also defined under the Drug-Free Workplace Act, there is no indication in § 456.074(3) that the Legislature intended to incorporate by reference the Drug-Free Workplace Act's definition of "employer" in addition to the definition of "confirmed drug test".   Furthermore, there is no indication that any part of § 440.102 was intended to be incorporated into § 456.073(4).   For these reasons, Ruehling's preferred reading of the statutory language fails.

As a result, the Court determines that § 456.074(3) is not unconstitutionally void for vagueness because "persons of reasonable intelligence" can determine its meaning and to whom the statute applies based upon its plain language.   Accordingly, Ruehling is not entitled to declaratory or injunctive relief in that regard.   Nor is he entitled to relief

---

6 "'[C]onfirmed drug test' means a second analytical procedure used to identify the presence of a specific drug or metabolite in a specimen. The confirmation test must be different in scientific principle from that of the initial test procedure. This confirmation method must be capable of providing requisite specificity, sensitivity, and quantitative accuracy." Fla. Stat. § 112.0455(5)(d).

concerning his argument that the statute does not apply to him as a nurse employed in the private sector.   Therefore, Dr. Armstrong's Motion for Summary Judgment (Dkt. 79) is **GRANTED** and Ruehling's Motion for Summary Judgment (Dkt. 81) is **DENIED**, as to Count I of the Second Amended Complaint.

### b.    COUNT II: § 1983 Procedural Due Process

Under Count II of the Second Amended Complaint, Ruehling brings a claim pursuant to 42 U.S.C. § 1983 for denial of his procedural due process rights.   The Eleventh Circuit has held that "a § 1983 claim alleging denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).   Ruehling's Second Amended Complaint alleges that he was deprived of both his property interest in his nursing license and his liberty interest in his reputation.   (Dkt. 1 at ¶¶ 34, 56, 58-59, 69)   Because either interest may form the basis of a § 1983 claim for denial of procedural due process, each interest is addressed separately.

### i.    *Property Interest*

There is no dispute that elements one and two are satisfied as to Ruehling's property interest in his nursing license.   However, Dr. Armstrong argues that Ruehling's § 1983 claim as to his property interest fails under the third element because the state provided Ruehling with constitutionally adequate process to challenge the emergency suspension of his nursing license.   An actionable procedural due process violation only arises "when the state refuses to provide a process sufficient to remedy the . . . deprivation." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994).   "Therefore, to

determine whether a constitutional violation has occurred, it is necessary to ask what process the [s]tate provided, and whether it was constitutionally adequate." <u>Zinermon v. Burch</u>, 494 U.S. 133, 126 (1990).  "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1331 (11th Cir. 2000).

In his Motion for Summary Judgment, Dr. Armstrong discusses at length the procedures available to Ruehling under Florida law that he could have used to challenge the emergency suspension of his nursing license.  These procedures included: 1) an immediate appeal to a state district court of appeal where Ruehling could have challenged the facial sufficiency (both factually and constitutionally) of the ESO; 2) proceeding with the formal administrative hearing process where Ruehling could have presented fact evidence and legal argument before an ALJ to challenge the allegations relied upon in the ESO and the Administrative Complaint; and 3) thereafter appealing the final order resulting from the administrative hearing process to a district court of appeal for judicial review.  Dr. Armstrong argues that Ruehling's procedural due process claim must fail because the state provided Ruehling with adequate notice and opportunities to be heard regarding his license suspension.  The fact that Ruehling voluntarily decided not to undertake the administrative hearing process is not a failure of the agency to provide him an adequate process.

In his Motion for Summary Judgment, Ruehling fails to address the adequacy of the process available to him to challenge the deprivation of his property interest in his nursing license; instead, Ruehling only addresses the alleged deprivation of his liberty

interest in his reputation.   (Dkt. 81 at P. 9-12)   Additionally, in his response in opposition to Dr. Armstrong's Motion for Summary Judgment, Ruehling does not address Dr. Armstrong's arguments as to the adequacy of the procedures available to challenge the license suspension other than seemingly conceding that the procedures provided by the state to challenge the allegations in the ESO and Administrative Complaint were adequate.   (Dkt. 86 at P. 7)   Accordingly, it appears that Ruehling has abandoned his argument that the state failed to provide him with constitutionally adequate process to challenge the deprivation of his property interest in his nursing license.   See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (finding claim abandoned where it was not argued in either party's response to motion for summary judgment or in party's own motion for summary judgment); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in complaint but not relied upon in summary judgment are deemed abandoned.")

Therefore, Dr. Armstrong is entitled to an entry of summary judgment in his favor to the extent that Ruehling's § 1983 claim for denial of procedural due process is premised on a deprivation of Ruehling's property interest in his nursing license.   Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (affirming grant of summary judgment in favor of defendant on plaintiff's abandoned claim).

### ii.   Liberty Interest

Ruehling's Second Amended Complaint also alleges that he was deprived of his liberty interest in his professional reputation by the publication of false information portraying him as a drug user.   (Dkt. 35 at ¶¶ 1, 34, 38, 56)   Ruehling alleges that his ability to practice nursing has been significantly foreclosed.   (Id. at ¶ 56)   This alleged

conduct and resulting claimed injury may give rise to an actionable procedural due process claim for deprivation of liberty, commonly referred to as a "stigma-plus" claim. Cotton v. Jackson, 216 F.3d at 1330.   If Ruehling can satisfy the requirements of the stigma-plus test established by the Supreme Court in Paul v. Davis, 424 U.S. 693 (1976), he meets his burden of establishing the first element of his § 1983 claim for denial of procedural due process, the deprivation of a liberty interest protected by the Due Process Clause.

### a.   Mootness

Dr. Armstrong contends that Ruehling's stigma-plus claim has become moot due to subsequent events and therefore must be dismissed.   (Dkt. 93)   Dr. Armstrong first argues that Ruehling has only asserted that the allegedly defamatory statements that form the basis of his claim were those included in the narratives on the nursys.com website.   Dr. Armstrong has filed affidavits attesting that narratives are no longer made available for the public to view on nursys.com due to a new policy that became effective December 16, 2014.   (Dkt. 93-1, 93-2)   In addition, Rene Coffield ("Coffield"), a Department employee who is responsible for inputting disciplinary information into the NURSYS® database, attests that she performed a data search for Gary Ruehling on the "Licensure QuickConfirm" service on nursys.com on March 25, 2015.   (Dkt. 93-1 at ¶ 13) The disciplinary action report for Ruehling pulled by Coffield on this date did not show any narratives.   (Id.)   Accordingly, Dr. Armstrong argues that because the alleged defamatory narratives are no longer available for the public to view on the nursys.com website, Ruehling's claim as to his liberty interest in his reputation is moot because there

is no longer any "substantial continuing controversy" between the parties.   See Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).

Dr. Armstrong's characterization of Ruehling's claim is too narrow.   When asked what information contained in the nursys.com disciplinary action report Ruehling found objectionable, he responded that they were narratives relating to his emergency suspension.   (Dkt. 81-1 at P. 75)   Specifically, he stated that the reference to any positive methadone drug tests and his participation in IPN for five years were both false statements.   (Id. at P. 75)   However, the question was specifically posed as to what he found objectionable *at the time that he initially viewed the website.*   (Id. at P. 74-75) Initially, only the narratives were posted on the nursys.com website.   (Dkt. 81-7; Dkt. 81-1 at P. 36)   At some point thereafter, documents relating to the suspension, including the ESO, were also added to the website.   (Dkt. 81-8; Dkt. 81-1 at P. 36-37)   Later in his deposition, Ruehling stated that the allegedly defamatory reference to a positive methadone test is also contained in the ESO, which at that time, was also posted on the website.   (Dkt. 81-1 at P. 38)   Although the affidavits submitted by Dr. Armstrong state that the narratives are no longer posted, they do not state that the related documents or other references have also been removed from the website.   (See Dkt. 93-1, 93-2)

Although the narratives are no longer posted, Ruehling's disciplinary action report under the Licensure QuickConfirm service on the website still includes information relating to the emergency suspension of his license due to a "DRUG SCREENING VIOLATION."[7]   Additionally, the report, perhaps inadvertently, includes a live link to both

---

7  The Court may take judicial notice of the information contained in Ruehling's Florida disciplinary action report, available through the nursys.com website under its "Licensure QuickConfirm" search, https://www.nursys.com/LQC/LQCSearch.aspx, viewed on May 21, 2015. Fed. R. Evid. 201; see also e.g. Termarsch v. Argent Mortg. Co., LLC., No. 8:07-CV-1725-T-

the ESO and the order lifting his emergency suspension.   These documents include the allegedly defamatory statements that Ruehling tested positive for methadone and that he entered into IPN for a five-year term.   Accordingly, the Court does not find that Ruehling's stigma-plus claim is moot simply because some, but not all, of the allegedly defamatory information has been removed from the nursys.com website.   Even so, a stigma-plus claim is a difficult one to sustain.

## b.   Stigma-Plus

In Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court established what has come to be known as the "stigma-plus" test.   Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005).   Under the test, a plaintiff claiming a deprivation of his liberty interest in his reputation based on defamation by the government "must establish the fact of defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protection of the Due Process Clause."   Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001).   "In considering what satisfies the 'plus' prong of this analysis, the *Paul* Court looked to whether state action had significantly altered or extinguished 'a right or status previously recognized by state law.'"   Behrens, 422 F.3d at 1260 (citing Paul, 424 U.S. at 711)).

The Court finds that there are disputed issues of material fact in the record concerning whether Ruehling suffered a "stigma" due to a false statement or representation of his wrongdoing in connection with the emergency suspension of his license, i.e. that he tested positive for methadone.   See Pete's Towing Co. v. City of Tampa, Fla., 648 F. Supp. 2d 1276, 1286 (M.D. Fla. 2009) aff'd, 378 F. App'x 917 (11th

---

30TBM, 2008 WL 1776592, at *4 n.4 (M.D. Fla. Apr. 16, 2008) (taking judicial notice of information available on publicly accessible website).

Cir. 2010)[8] ("A 'stigma' exists if a state actor made concrete, false factual representations or assertions regarding a claimant's wrongdoing.").  In this case, Ruehling argues that the statement that he tested positive for methadone is a false statement of fact.  Ruehling contends that he had not taken methadone and that the tests were false positives due to contamination during in the collection and testing processes.  (Dkt. 81-1 at P. 18, 20, 121-22, 127, 137; Dkt. 81-6)  In addition to Ruehling's own testimony, other evidence exists in the record which tends to support his contention that the testing procedures were flawed and that the drug tests were false positives.  This evidence includes: the documented deficiencies in the Palms' own lab and their collection and testing of his urine sample (Dkt. 81-1 at P. 136; Dkt. 81-6; Dkt. 81-13); the fact that Ruehling was released from the IPN drug-monitoring contract shortly after entering into it by demonstrating the deficiencies in the collection process (Dkt. 81-1 at P. 32, 64, 82, 122-23); and his two settlements with the entities involved in the collection and testing of his sample.  (Dkt. 84 at P. 3-5)  Therefore, Ruehling has submitted evidence which, when taken in the light most favorable to him, would tend to support the finding that a false factual representation was made about him during the course of his license suspension.[9]

As to the "plus" requirement, the Court finds that Ruehling's difficulty in finding employment after the emergency suspension of his license was lifted is insufficient to

---

8  "Although an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

9  Ruehling also contends that the statement that he entered into IPN for a five-year term is false because he was actually released from the program five or six months after entering. (Dkt. 81-1 at P. 82)  However, Ruehling admitted and stipulated that he did, in fact, execute an agreement to enter into IPN for a five-year term and that the Department lifted the emergency suspension of his license on that basis.  (Dkt. 81 at P. 2; Dkt. 81-1 at P. 28, 32; Dkt. 84 at P. 3) The fact that he was subsequently released from the program prior to the completion of the five-year term does not make the fact of his original agreement false.

supply the "plus" prong of the claim under binding case law.   See Siegert v. Gilley, 500 U.S. 226, 234 (1991) (holding that even a "serious impairment of [plaintiff's] future employment opportunities" without more, is insufficient under Paul); Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 575 n. 13 (1972) (a liberty interest is not infringed when defamatory statements make individuals "somewhat less attractive to . . . employers."); Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1298 (11th Cir. 2003) ("the deleterious effects that flow directly from a sullied reputation, such as the adverse impact on job prospects, are normally insufficient," to satisfy the "plus" requirement); see also Elkins v. Gallagher, No. 96-464-CIV-T-23A, 1997 WL 441274, at *4 (M.D. Fla. May 30, 1997) ("potential reactions of third parties to allegedly defamatory statements, such as the apparent reactions of prospective employers in this case, are insufficient to satisfy the stigma-plus test."); McDonough v. O'Rourke, 897 F. Supp. 1445, 1448 (S.D. Fla. 1995) ("The alteration of a legal right or status involves more than the loss of employment opportunities occasioned by an instance of defamation.").

Furthermore, although Ruehling states that he was "significantly foreclosed" from obtaining employment after the emergency suspension of his license was lifted, the only evidence that he submits to support this statement is email correspondence from CoreMedical Group, a professional staffing company for hospitals around the country, stating that the company could not assist him in his employment search and directing him to his nursing license information on nursys.com.   (Dkt. 81-1 at P. 72-73; Dkt. 81-11 at P. 1-2)   Ruehling has not, however, identified any actual jobs from which he was rejected because of the information posted on the nursys.com website.   Additionally, his contention that he has been significantly foreclosed from employment opportunities in the

nursing profession is further negated by the fact that he has held three jobs in the nursing field since the emergency suspension was lifted, one of which he continues to hold to this date.

Nonetheless, the Court does find that the suspension of Ruehling's license, along with his complete inability to pursue a position in the nursing field in the finite period of his license suspension, is sufficient to meet the plus requirement.  See Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1437 (11th Cir. 1998) (simple loss of business opportunities or income is not enough to satisfy the plus requirement but revocation of license to engage in plaintiff's field of business would be sufficient); see also Ming Wei Liu v. Bd. of Trustees of Univ. of Ala., 330 F. App'x 775, 780 (11th Cir. 2009) (discussing cases recognizing that the liberty component of the Due Process Clause includes the right to pursue a profession and holding that to satisfy the "plus" requirement, one must show "that a governmental act effectively banned him or her from a profession."); Pete's Towing, 648 F. Supp. 2d at 1286 (noting that the Due Process Clause secures "the liberty to pursue a calling or occupation," and that one's liberty interest is only violated when the state "completely prohibits 'the right to engage in a calling.'").

Again, however, even if Ruehling can establish both a "stigma" and a "plus," he must also establish that the state failed to provide adequate process to remedy the claimed violation.  Cotton v. Jackson, 216 F.3d at 1330-31.  Therefore, the Court must consider "whether adequate procedures were available to [Ruehling] to correct [his] right not to be deprived of [his] liberty interest in his reputation by state action."  Id. at 1331.  If adequate procedures existed but Ruehling failed to take advantage of them, his stigma-plus claim will also fail.  Id.

When the state deprives an individual of a liberty interest in his reputation, the only remedy that the state is required to provide is the "opportunity to clear one's name." Campbell v. Pierce County, Ga., 741 F.2d 1342, 1345 (11th Cir. 1984) (citing Codd v. Velger, 429 U.S. 624, 627 (1977)).   An individual must be afforded the opportunity "to support his allegations by argument however brief, and, if need be, by proof, however informal."   Id. at 1345 (citations omitted).   Because the purpose of providing the opportunity is to simply cleanse the aggrieved party's reputation, it need not be provided prior to the deprivation.   Id.   Additionally, the Eleventh Circuit has stated that "[b]ecause this opportunity is not as strict as the process required before one can be deprived of a property interest," due process may be satisfied by the same opportunities providing for notice and hearing to address a deprivation of property.   Harrison v. Wille, 132 F.3d 679, 683 n. 9 (11th Cir. 1998); see also e.g. Hayden v. Ala. Dep't of Pub. Safety, 506 F. Supp. 2d 944, 954-55 (M.D. Ala. 2007) (hearing afforded to plaintiff when he appealed his termination was sufficient "name-clearing" opportunity because he had the opportunity to refute the allegedly stigmatizing statement, i.e. the stated reason for his termination).

In this case, Ruehling cannot show that the state failed to provide him with an adequate opportunity to clear his name.   As reflected above, the only time period that Ruehling may be able to establish both a "stigma" and a "plus" was during the time that his nursing license was suspended on an emergency basis.   Ruehling claims that he was stigmatized by the statement that he had tested positive for drugs.   His positive drug tests were the bases for the both the emergency suspension of his license and the Administrative Complaint seeking formal discipline against him.   At this point in time, Ruehling was provided with an opportunity for an evidentiary hearing before an impartial

ALJ where he could have presented evidence, argued and responded to all issues, and cross-examined witnesses. See Fla. Stat. §§ 120.569(2) & 120.57(1)(b). At the hearing, Ruehling would have been afforded the opportunity to argue and support his contention that the drug tests were actually false positives. Accordingly, this hearing would have met the requirements set forth by the Eleventh Circuit for a name-clearing hearing. See Campbell, 741 F.2d at 1345. The evidentiary hearing was scheduled to occur on December 14, 2009, but was subsequently cancelled based on the agreement reached between Ruehling and the Department.

Dr. Armstrong contends that by voluntarily entering into the IPN contract and failing to move forward with the administrative hearing process, Ruehling waived his right to now demand a name-clearing hearing. A plaintiff's decision to settle a case or to voluntarily submit to the disciplinary action that is sought to be enforced against him may waive his ability to later request a name-clearing hearing. See Yelvington v. Fleming, No. 3:07-cv-110-J-16MCR, 2007 WL 1970866, (M.D. Fla. July 3, 2007) (citing Stewart v. Bailey, 556 F.2d 281 (5th Cir. 1977), rev'd on reh'g on other grounds, 561 F.2d 1195 (5th Cir. 1977), for the proposition that a plaintiff waives the right to a name-clearing hearing when he voluntarily resigns in light of impending termination proceedings). The Court recognizes that where the absence of a name-clearing hearing is attributable only to the defendant's actions, a plaintiff's right to a name-clearing opportunity is not waived and the deprivation of that right is not otherwise cured by the defendant's decision not to move forward. See Guite v. City of Punta Gorda, No. 2:07–cv–736–FTM–29SPC, 2009 WL 2355797, at *7 (M.D. Fla. July 29, 2009) (finding that city's decision not to carry out formal action or sanctions that it voted to impose against construction company did not waive or cure

company's right to a name-clearing hearing; "[i]f anything, it stifled [the company]'s ability to seek a cure").

In this case, however, the cancellation of the hearing that would have afforded Ruehling a "name-clearing" opportunity was not solely due to the actions of the Department.   The undisputed evidence shows that the evidentiary hearing was cancelled because Ruehling and the Department came to a "negotiated resolution" of the case whereby Ruehling voluntarily agreed to enter into a five-year monitoring contract with IPN if the Department would lift the emergency suspension of his nursing license and send his case back to the Board of Nursing's Probable Cause panel with a recommendation of dismissal.   Although there appears to be no written settlement agreement between the parties, their agreement to resolve the case is reflected in the joint motion to relinquish jurisdiction of the case filed with the ALJ (Dkt. 37-2 at P. 37-38), the Department's order lifting the ESO,[10] the transcript of the Probable Cause panel's hearing dismissing Ruehling's case (Dkt. 80-11), the Probable Cause panel's closing order (Dkt. 80-12), Ruehling's own testimony (Dkt. 81-1 at P. 82-83), and the testimony of the Department's general counsel, Tschetter.   (Dkt. 81-3 at P. 18-19)

Ruehling's contention from the start of this dispute has been that he did not take methadone and that therefore the drug tests were false positives.   Ruehling was provided with an adequate opportunity to challenge the results of the drug tests during the evidentiary hearing that was set to occur before the ALJ.   If he had succeeded, he would have effectively cleared his name and removed any stigma from his reputation. Instead of taking advantage of that opportunity with all of its attendant risks, Ruehling

---

10   The Court has taken judicial notice of the order lifting the ESO as part of the information contained on the nursys.com website.

opted voluntarily to enter into the IPN contract in exchange for the Department's agreement to lift the emergency suspension of his nursing license and recommend that the Probable Cause panel dismiss his case, which it did.   By agreeing to resolve the case under these terms, Ruehling received the benefit of having his nursing license reinstated immediately and avoided any further disciplinary action by the Department.   In fact, Ruehling testified that he wanted to move forward with the evidentiary hearing but he opted instead to resolve the case by entering into IPN because he needed his nursing license to be reinstated immediately for financial reasons.   (Dkt. 81-1 at P. 27-28)

Here, like the plaintiffs in Stewart and Yelvington, Ruehling was faced with a choice, and he "knowingly and intelligently chose to waive his right to a hearing" in order to obtain immediate financial relief and to move forward in his employment pursuits. Stewart, 556 F.2d at 286; Yelvington, 2007 WL 1970866, at *7.   Once Ruehling waived his right to a hearing, the Department was "excused from any further due process requirements" or obligations.   Stewart, 556 F.2d at 285-86.   Therefore, because Ruehling waived his right to a name-clearing hearing, his § 1983 procedural due process claim for deprivation of his liberty interest in the only finite period during which he can prove a stigma-plus claim must fail.   As noted, to the extent that Ruehling attempts to characterize his stigma-plus claim as arising from the subsequent posting of the allegedly defamatory statements on the nursys.com website after his license was reinstated,[11] that claim would fail because Ruehling cannot establish the "plus" prong subsequent to the Department's lifting of his license suspension.

---

[11]   It is unclear from this record whether the alleged defamatory information was originally posted on the nursys.com website before or after the lifting of Ruehling's license suspension.   However, this fact is immaterial to the Court's holding because Ruehling cannot establish an actionable stigma-plus claim during either time period.

Accordingly, because Ruehling has abandoned his procedural due process claim as to his property interest in his nursing license and because he cannot meet the high burden of the stigma-plus test as to his liberty interest in his reputation at this time, his § 1983 claim for denial of procedural due process fails. [12] For these reasons, Dr. Armstrong's Motion for Summary Judgment (Dkt. 79) is **GRANTED** and Ruehling's Motion for Summary Judgment (Dkt. 81) is **DENIED**, as to Count II of the Second Amended Complaint.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1.  Defendant's Motion for Summary Judgment (Dkt. 79) is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment (Dkt. 81) is **DENIED**.

3.  As this Order fully resolves the case, the previously scheduled final pretrial conference and trial on May 26, 2015 are **CANCELLED**.

4.  The **CLERK** is directed to enter **JUDGMENT** in favor of the Defendant, **TERMINATE** any pending motions, and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 21st day of May, 2015.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

---

12   The Court would note, importantly, that should Ruehling subsequently be able to establish a future actual foreclosure of employment opportunities due to the continuous attachment of the live links on the clarified posting, which appears to be inadvertent, a claim may again lie against those responsible for the inclusion of the links.